IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KIRK D. ROBINSON,<br><br>                 Plaintiff,<br><br>vs.<br><br>STATE OF NEBRASKA, NEBRASKA DEPARTMENT OF CORRECTIONS, SCOTT FRAKES, Director; ANY AND ALL NDCS LEGAL DEPARTMENT STAFF, Names not known at this time; OMAHA CORRECTIONS CENTER, LEWIEN, Warden; FREESE, Deputy Warden; LARSON, Major; BENNETT, Lt.; REYNOLDS, Cpl.; HAYES, Lt.; LEMKEN, Sgt.; WITCOPT, Sgt.; NICHOLAS, Unit Manager; LATKA, Case Manager; WEESE, Unit Administrator; JANE SKINNER, Librarian; DIANE SABOTKE-RINE, Interim NDCS director; NEBRASKA OMBUDSMAN'S OFFICE, JULIE ROGERS, Ombudsman; and SARA AMSBERRY, Ombudsman Representative;<br><br>                 Defendants. | 8:22CV398<br><br>**MEMORANDUM AND ORDER** |

Plaintiff Kirk D. Robinson, a state prisoner, filed his pro se Complaint on November 16, 2022. Filing No. 1. Plaintiff paid the full filing fee of $402.00 on January 6, 2023. The Court will now conduct an initial review of the Complaint pursuant to 28 U.S.C. § 1915A.

**I. SUMMARY OF COMPLAINT**

Plaintiff's Complaint asserts claims under 42 U.S.C. § 1983 against several individuals and entities, including the State of Nebraska, the Nebraska Department of Corrections, Director Scott Frakes, the Omaha Corrections Center ("OCC"), and multiple prison administrators, case managers, corrections officers, and representatives of the

ombudsman's office. In sum, Plaintiff asserts that since August 2022, he has been subjected to a severe library use restriction (the "use restriction") arising out of a conflict between Plaintiff and several of the Defendants. Filing No. 1 at 3. Plaintiff asserts the use restriction was given to him in the form of a warden-level directive, handed down by Defendant Freese, Deputy Warden.[1] Filing No. 1 at 3. To the best of Plaintiff's knowledge, he is the only inmate at OCC subject to the use restriction. Filing No. 1 at 3. Plaintiff acknowledges that prison policy requires every inmate at OCC to request and receive a pass to use the library, but maintains the policy is only being enforced against him. Filing No. 1 at 3.

The Complaint does not directly describe the nature of the use restriction; however, as best the Court can discern and construed liberally, the use restriction requires Plaintiff to "request and receive a pass" to use the library at OCC. *See* Filing No. 1 at 3, 13. Attached to the Complaint are several documents, including an Inmate Interview Request ("IIR") dated August 23, 2022, Filing No. 1 at 8 (the "August 23 IIR"). Plaintiff's principal claim appears to arise out of information communicated to him in the August 23 IIR. In the August 23 IIR, Plaintiff complained that when he attempted to enter the library on that date, Jane Skinner, the librarian at OCC, had Plaintiff escorted out of the library. Filing No. 1 at 8. At some point, Deputy Warden Freese's office informed Plaintiff that he could not go to the library without a written pass. Filing No. 1 at 8.

A typed reply on the August 23 IIR, dated August 30, 2022, and signed by Warden Lewien, states:

> Based on your negative interactions with Librarian Skinner, an administrative decision was made to require that you submit IIRs in order to receive a pass to visit the library. Under no circumstance are you to enter

---
[1] Defendant does not state the first name of several Defendants, including Deputy Warden Freese.

the library without an approved pass. Continue to remain respectful in your interactions with staff.

Filing No. 1 at 8, 12.

Plaintiff submitted additional IIRs on September 10, 2022, Filing No. 1 at 10–11, and October 12, 2022, Filing No. 1 at 9, related to the incident on August 23, 2022, and the use restriction. He also filed an Informal Grievance on September 1, 2022, Filing No. 1 at 12, related to the incident and the use restriction. The reply to each of these requests and grievances referenced Warden Lewien's response to the August 23 IIR. *See* Filing No. 1 at 10–11; Filing No. 1 at 9; Filing No. 1 at 12. The additional documentation attached to Plaintiff's Complaint includes general prison policies related to library use, grievances, IIRs, and correspondence related to the use restriction and the library incident on August 23, 2022. *See generally*, Filing No. 1 at 13-101.

Plaintiff alleges[2] the use restriction violates his Equal Protection rights. He asserts the use restriction "severely" restricts his access to the library compared to other inmates and "create[s] a class-of-one situation for the Plaintiff." Filing No. 1 at 5. Plaintiff requests that the Court remove the use restriction.

Plaintiff also asserts that he complained several times and gave Defendants "ample opportunity to correct their mistake and they refuse[d] to do so." Filing No. 1 at 5. Plaintiff alleges that on November 10, 2022, he expressed his dismay to Defendants Lt. Bernice Mines, Lt. Bennett, and Sgt. Witcopt. Filing No. 1 at 5. In response to Plaintiff's

---

[2] Plaintiff also makes allegations that Deputy Warden Freese misled the Ombudsman's office in stating that the use restriction was not a warden-level directive and that Plaintiff was just subject to the policy. Filing No. 1 at 4. Plaintiff also asserts that Jane Skinner, the librarian at OCC, bore "false witness" against Plaintiff. Filing No. 1 at 5. The Complaint does not identify the alleged false statement, and neither Plaintiff's "Claim" nor his prayer for relief seek any redress for these actions. Accordingly, the Court does not construe these allegations as separate claims and they are not addressed as separate claims in this initial review.

3

complaints, Lt. Mines stated, "We just don't care." Filing No. 1 at 5–6. Due to this "absolute disregard" for Plaintiff and his rights, Plaintiff seeks punitive damages in the amount of $2.5 million. Filing No. 1 at 6.

## II. APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The Court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A. The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed,

and pro se litigants are held to a lesser pleading standard than other parties." *Topchian, 760 F.3d at 849* (internal quotation marks and citations omitted).

### III. DISCUSSION

Plaintiff's Complaint is a civil rights action brought under 42 U.S.C. § 1983. To state a claim under section 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute, and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Even construed liberally, Plaintiff has not stated a claim for which relief can be granted. First, the Complaint does not make allegations against several named Defendants. Second, Plaintiff's claims for damages are barred by sovereign immunity. Finally, Plaintiff has not sufficiently pled an Equal Protection claim.

#### A. Defendants Not Named in the Complaint

As an initial matter, Plaintiff names "Warden Lewien," "Major Larson," "Lt. Hayes," "Sgt. Lemken," "Unit Manager Nicholas," "Case Manager Latka," "Unit Administrator Weese," and "Ombudsman Julie Rogers," as defendants; however, the Complaint is silent as to their involvement in the claims alleged. Although some of these names appear in documents attached to the Complaint, the Complaint makes no specific allegation against them. This deficiency alone would allow the Court to dismiss all claims against these Defendants. *See Krych v. Hvass*, 83 Fed.Appx. 854, 855 (8th Cir. 2003) (holding court properly dismissed claims against defendants where pro se complaint was silent as to the defendants except for their names appearing in the caption).

**B.     Sovereign Immunity**

Plaintiff also names several defendants who appear to be instrumentalities of the State of Nebraska or employees of the State. The Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities, and an employee of a state sued in the employee's official capacity. See, e.g., Egerdahl v. Hibbing Cmty. Coll., 72 F.3d 615, 619 (8th Cir. 1995); Dover Elevator Co. v. Arkansas State Univ., 64 F.3d 442, 446-47 (8th Cir. 1995). Claims for a declaration of past constitutional violations against the state, its agencies, and state employees in their official capacities are likewise barred by Eleventh Amendment immunity. See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993) (Eleventh Amendment does not permit judgments against state officers declaring that they violated federal law in the past). In addition, a state or state agency is not a "person" as that term is used in § 1983 and is not suable under the statute. See Hilton v. South Carolina Pub. Railways Comm'n, 502 U.S. 197, 200-01 (1991).

A state's Eleventh Amendment immunity does not bar a suit against state officials when the plaintiff seeks only prospective relief for ongoing violations of federal rights. Verizon Md. Inc. v. Public Serv. Comm'n of Md., 535 U.S. 635 (2002); Ex Parte Young, 209 U.S. 123 (1908). State officials sued in their official capacities for injunctive relief are "persons" under § 1983, because official capacity actions for prospective relief are not treated as actions against the state. Hafer v. Melo, 502 U.S. 21, 27 (1991); Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989); Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985).

Plaintiff's claims against the State of Nebraska and state agencies and entities—the Nebraska Department of Corrections,[3] the OCC, and the Nebraska Ombudsman's office[4]—cannot proceed under § 1983. Further, because Plaintiff does not specify that any of the Defendants are sued in their individual capacities, it must be presumed that they are sued only in their official capacity. See *Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007). A suit against a public employee in his or her official capacity is merely a suit against the public employer. *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). Thus, sovereign immunity bars Plaintiff's claims for monetary damages against the Defendants who are state agents or employees.

**C.  Plaintiff's 'Class-of-One' Claim**

Although the Complaint vaguely references other wrongdoing, Plaintiff's only stated claim is that "by severely restricting [Plaintiff's] use of the library, [Defendants] have violated his rights and the equal protection that should be provided to all inmates" at the OCC. Filing No. 1 at 5. "The Equal Protection Clause of the Fourteenth Amendment . . . is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Where, as in this case, a plaintiff has not shown discrimination based on membership in a class or group, the Supreme Court's "cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the

---

[3] Plaintiff presumably means to assert claims against the Nebraska Department of Correctional Services.

[4] The Ombudsman's office (or Public Counsel) is an office of the legislative branch of state government. See Neb. Rev. Stat. §§ 81-8,241 et seq.; *Smith v. Iverson*, No. 8:19CV298, 2019 WL 4417548, at *13 (D. Neb. Sept. 16, 2019); *State ex rel. Shepherd v. Nebraska Equal Opportunity Comm'n*, 557 N.W.2d 684, 691 (Neb. 1997).

difference in treatment." *Mensie v. City of Little Rock*, 917 F.3d 685, 692 (8th Cir. 2019) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, (2000)). "To be similarly situated for purposes of a class-of-one equal-protection claim, the persons alleged to have been treated more favorably must be identical or directly comparable to the plaintiff in all material respects." *Robbins v. Becker*, 794 F.3d 988, 996 (8th Cir. 2015) (emphasis supplied) (quoting *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010)).

The Complaint makes no allegation that other inmates are otherwise directly comparable to Plaintiff in all material respects. The Eighth Circuit has held that "the class-of-one theory [is] a 'poor fit' in a context that involve[s] discretionary decisionmaking." *Flowers v. City of Minneapolis, Minn.*, 558 F.3d 794, 799 (8th Cir. 2009). The documentation attached to the Complaint suggests that the use restriction was an "administrative decision" resulting from Plaintiff's "negative interactions with Librarian Skinner." *See* Filing No. 1 at 8. In Nebraska, inmate disciplinary actions are committed to the discretion of the chief executive officers of each facility. *See* Neb. Rev. Stat. § 83-4,114.01. Thus, to the extent the use restriction arises out of discretionary disciplinary action, Plaintiff has failed to state a class-of-one Equal Protection claim upon which relief can be granted.

Moreover, the Complaint does not sufficiently allege that the use restriction differentiates his library access compared to other prisoners. Limits on law library access are common in a prison setting. *See Yanga v. Nebraska Dep't of Corr. Servs.*, No. 8:19CV420, 2020 WL 6800428, at *2 (D. Neb. Nov. 19, 2020) ("Plaintiff's lack of legal training and limited access to a law library do not differentiate him from most pro se prisoner-plaintiffs."). Other than requiring Plaintiff to seek permission to go to the law

library, Plaintiff does not allege that the use restriction limits his access to a law library in a way that differentiates him from most prisoners. Accordingly, Plaintiff fails to allege the elements of an Equal Protection claim.

## VI. CONCLUSION

Plaintiff's Complaint fails to state a claim upon which relief may be granted. However, the Court on its own motion will give Plaintiff 30 days in which to file an amended complaint that states a plausible equal protection claim upon which relief may be granted, consistent with this Memorandum and Order.

IT IS THEREFORE ORDERED:

1. Plaintiff shall have 30 days to file an amended complaint in accordance with this Memorandum and Order. Failure to file an amended complaint within the time specified by the Court will result in the Court dismissing this case without further notice to Plaintiff. In his amended complaint, Plaintiff must comply with federal pleading requirements.

2. In the event Plaintiff files an amended complaint, Plaintiff shall restate the allegations of the Complaint, Filing No. 1, and any new allegations. Failure to consolidate all claims into one document may result in the abandonment of claims. Plaintiff is warned that an amended complaint will supersede, not supplement, his prior pleadings.

3. The Court reserves the right to conduct further review of Plaintiff's claims in the event he files an amended complaint.

4. The Clerk of the Court is directed to set a pro se case management deadline using the following text: **June 16, 2023**—amended complaint due.

Dated this 17th day of May, 2023.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge